IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*



FILED
IN OPEN COURT

JAN 1 7 2024

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:24-cr-__4__ |
| v. | 18 U.S.C. §§ 1343 and 2<br>Wire Fraud<br>(Counts 1-10) |
| DAVID L. MERRYMAN, | |
| Defendant. | 42 U.S.C. § 3631 and 18 U.S.C. § 2<br>Interference with Housing<br>(Counts 11-14) |
| | 18 U.S.C. §§ 875(c) and 2<br>Interstate Communications with Threats to<br>Injure<br>(Counts 15-16) |
| | 18 U.S.C. §§ 641 and 2<br>Theft of Government Money<br>(Counts 17-22) |
| | 18 U.S.C. §§ 1010 and 2<br>False Statement to Department of Housing<br>and Urban Development<br>(Counts 23-26) |
| | 18 U.S.C. §§ 1028A and 2<br>Aggravated Identity Theft<br>(Counts 27-30) |
| | 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. §<br>2461<br>Asset Forfeiture |

INDICTMENT

January 2024 Term – at Newport News, Virginia

GENERAL ALLEGATIONS

At all times relevant to the Indictment:

### The Defendant and Associated Business Entities

1.      DAVID MERRYMAN resided at **** Chesapeake Avenue, Hampton, Virginia, in the Eastern District of Virginia.  He was the sole owner of Merryman Grounds Maintenance, Inc.

2.      Merryman Grounds Maintenance, Inc., ("MGM") was a business that was incorporated in the Commonwealth of Virginia on or about March 27, 1995.  MERRYMAN was the president of MGM and served as its registered agent with a registered office address of ** Ranhorne Court, Hampton, Virginia 23661.  MERRYMAN was the only officer or director listed for the business in its annual filings with the Virginia State Corporation Commission.  According to marketing for the business, MGM sells a wide variety of landscaping services to customers.

3.      MERRYMAN owned approximately 23 rental properties in Hampton, Virginia, and approximately 39 rental properties in Newport News, Virginia.  MERRYMAN primarily owned these properties in his individual capacity and operated his landlord business as a sole proprietorship.  However, he used various employees and resources of MGM in support of his landlord business and commingled assets between the two businesses.

4.      MERRYMAN had a long history of failing to maintain his properties in compliance with state and local regulations and offering properties for rent that were structurally unsound and without functioning heat and plumbing.  Notwithstanding the poor condition of his properties, he continued to offer them for rent, primarily to low-income African American tenants with few other options who are marginally housed or vulnerable to homelessness.  Once he had obtained such an applicant, he charged them particularly high initial fees, deposits, and rent, even requiring several months' rent be prepaid in some cases.  He then subjected these same tenants to verbal harassment and threats, racial slurs, and other discriminatory practices in part so they will either refrain from

making complaints and/or taking action concerning the poor condition of the property, or even leave the property, and he can start the cycle again.

5.     MERRYMAN's primary personal bank accounts were with Langley Federal Credit Union (account ending 6098) and Navy Federal Credit Union (account ending 8036). MERRYMAN's personal accounts reflect deposits and withdrawals of approximately $572,000 and $570,000 respectively in or about 2020, approximately $689,000 and $616,000 respectively in or about 2021, and approximately $411,000 and $406,000 respectively between in or about January and October 2022.

6.     MERRYMAN's primary business account for Merryman Grounds Maintenance, Inc., was with Langley Federal Credit Union (last four digits 0308).  Deposits for Merryman Grounds Maintenance, Inc., were approximately $673,041 in or about 2020, approximately $498,906 in or about 2021, and approximately $269,686 from in or about January through October 2022.

Background on Emergency Rental Assistance Program

7.     As a result of the COVID-19 pandemic, the United States made certain benefits available to help struggling tenants and landlords affected by the national health crisis, establishing two Emergency Rental Assistance (ERA) programs.

8.     First, in 2021, as part of the Consolidated Appropriations Act, the United States provided $25 billion to assist eligible households with financial assistance and housing stability services.

9.     Second, in the American Rescue Plan Act of 2021, the United States provided $21.55 billion to help eligible households with financial assistance and provide housing stability services to cover the costs of affordable rental housing and eviction prevention activities.

10.     The United States provided ERA funds to state and local governments to distribute to applicants in their jurisdictions who were experiencing a financial hardship, were at risk of housing instability, and after meeting certain income requirements, affected by the pandemic and in need of rent relief payments. This program was administered by the Department of the Treasury, and grantees handled applications and individual eligible household disbursements in their localities. Grantees were expected to employ reasonable fraud prevention and validation procedures and required to comply with reporting and auditing obligations. The Treasury Office of the Inspector General (Treasury OIG) was ordered to conduct oversight by monitoring the disbursement and use of funds, and where it determined that grantees had not complied with the provisions governing the use of funds, it was authorized to recoup those funds to be reallocated to other grantees. Congress allocated up to $10,500,000 to the Treasury OIG for these oversight and recoupment duties.

11.     In Virginia, ERA funds were primarily distributed as part of the Virginia Rental Relief Program (RRP) through two organizations: Virginia Housing, formerly known as Virginia Department of Housing and Community Development (VHDA), and the Virginia Department of Housing and Community Development.

12.     VHDA is a not-for-profit organization created by the Commonwealth of Virginia in 1972 to help Virginians attain quality, affordable housing. VHDA does so, in part, by providing mortgages, primarily for first-time homebuyers and developers of quality rental housing, which it funds by raising money in the capital markets. VHDA also teaches homeownership classes and helps elderly tenants and those with disabilities make their homes more livable. Since its founding, VHDA has financed more than 240,000 single-family home loans and 170,000 multifamily loans.

13.     During the pandemic, VHDA distributed rent relief benefits in Virginia – more than approximately 99% of which were funded by the federal government.  Specifically, the VHDA received and distributed more than $137 million in federal funds from the Department of the Treasury and more than $77 million from the Department of Housing and Urban Development for the Housing Choice Voucher Program in Fiscal Year 2022.  By contrast, it received and distributed approximately $1.5 million in funds from the Commonwealth of Virginia for rent relief.

14.     As part of the application for ERA and RRP funds, landlords like MERRYMAN completed and submitted required paperwork in which they certified the accuracy of the applications and that they complied with the rules and regulations of the ERA and RRP programs.  Tenants are required to sign and complete certain portions of the application, but landlords remain responsible for verifying the information therein.

15.     The VHDA emailed MERRYMAN on or about December 8, 2020, and directed him as a beneficiary of the program to think of himself as "the reviewer who is responsible for showing that this is COVID related, there was a loss of income and they could not pay rent, and there is no fraud happening."

<u>Scheme and Artifice to Defraud</u>

16.     From in or about 2015, through at least the date of this Indictment, MERRYMAN created a scheme and artifice to defraud and obtain money and property by making various materially false pretenses, representations, and promises.  The objects of the scheme and artifice included, but were not limited to, the following:

a)      to obtain by fraud rent relief benefits from VHDA made available by the Commonwealth of Virginia and United States as a result of the COVID-19 pandemic;

5

b)   to obtain by fraud large initial payments in the form of security deposits, prepaid rent, and other fees, however construed, from prospective tenants by advertising, holding out, or implying that he would lease the rentals for longer tenancy terms when he had the true intention to evict them as quickly as possible to generate additional profit by restarting the cycle to collection additional high initial payments from new tenants; and

c)   to offer for rent homes that were in poor repair or failed to meet even basic standards of habitability by targeting vulnerable African American tenants, and to make false promises to repair them prior to the tenants' taking possession or to reimburse tenants for repair expenses they incurred, all while refusing to actually make the repairs or reimburse expenses, frequently using discriminatory justifications for his refusals.

17.   It was a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, used the names and other personally identifying information (PII) of tenants to apply for rent relief benefits without the consent of the tenant applicants.

18.   It was further a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, eschewed written agreements with tenants to prevent them from obtaining utilities or other claim to his properties while also facilitating his own ability to evict or otherwise condemn properties at will.

19.   It was further a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, acted to further the scheme to obtain by fraud rent relief payments to which he was not entitled by fabricating entire copies of lease documents that did not exist that he and his aiders and abettors filled out with often incorrect information related to the tenants, and

backdated documents before forging his tenants' signatures and otherwise falsely represented himself as authorized to act on behalf of his tenants on applications for rent relief benefits, leases, addenda to leases, and other necessary documentation.

20.     It was further a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, made false representations about the rent and fees due and owing from the tenant-applicants on the rent relief applications.

21.     It was further a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, made false representations in written applications about the tenant-applicants residing in the subject properties during the time periods at issue.

22.     It was further a part of the scheme and artifice that MERRYMAN, aided and abetted by others known and unknown, obtained rent relief benefits without telling tenants, used the money for himself, and later evicted the same tenants for purportedly unpaid rent.

23.     It was further a part of the scheme and artifice that MERRYMAN purposely rented to vulnerable, minority tenants with poor credit history and limited other options for housing.

24.     It was further a part of the scheme and artifice that MERRYMAN required prospective tenants to make significant upfront payments to move into his properties, which payments included or were falsely labeled as, among other things, application fees, security deposits, and advance rent payments.

25.     It was further a part of the scheme and artifice that MERRYMAN would falsely promise prospective tenants that he would make repairs to the properties at issue to induce them to pay the significant upfront payments.

26.     It was further a part of the scheme and artifice that MERRYMAN would falsely promise tenants that he would credit their rent if they expended funds to repair the properties to induce them to pay for such repairs themselves.

27.     It was further a part of the scheme and artifice that MERRYMAN, having obtained significant upfront payments, would engage in racist and discriminatory harassment of tenants and would otherwise pressure tenants to leave the properties, so he could start the fee-collection cycle again.

28.     It was further a part of the scheme and artifice that MERRYMAN used his harassment of specifically African American tenants to enrich himself at the expense of his victims and their basic habitability and enjoyment of the occupancy of their homes, including acting to prevent such tenants from making complaints or taking other action concerning the condition of the properties so as to avoid having to expend promised funds to repair.

29.     It was further a part of the scheme and artifice that MERRYMAN pressed many tenants to pay rent in U.S. currency and refused to provide confirmatory receipts, which facilitated him demanding more than the agreed upon rent amount and evicting tenants even when they had paid rent.

30.     It was further a part of the scheme and artifice that MERRYMAN caused electronic transfers of information in furtherance of the scheme to occur between locations in the Eastern District of Virginia and terminals and/or computer servers located outside the Commonwealth of Virginia.

<u>E.P.</u>

31.     E.P. is an African American woman.

32.     In or about July 2015, E.P. rented a single-family home located at *** 31st Street, Newport News, Virginia, 23607, from MERRYMAN. E.P. lived in this home until she was evicted by MERRYMAN in or about August 2021.

33.     E.P. regularly paid MERRYMAN rent from 2015 until she was laid off from her job in 2021 during the pandemic and suffered some medical problems resulting in her hospitalization. Specifically, E.P. fell behind on her rent in the summer of 2021. While E.P. was hospitalized or soon thereafter, MERRYMAN sent a crew to remove all her belongings from her home and had her car towed. E.P. lost all her belongings in the house.

34.     On or about May 10, 2021, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, applied to the VHDA for approximately $15,100.00 in rent relief benefits for E.P. at *** 31st Street in Newport News, Virginia, 23607. E.P. did not know about, consent to, or otherwise authorize or benefit from this application. MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, used E.P.'s name and forged her signature on the rent relief application, all without her consent.

35.     MERRYMAN falsely represented to the VHDA that E.P. owed back rent beginning as early as June 2020 through August 2021. MERRYMAN further submitted a fabricated residential lease agreement and an addendum to renew and extend the lease, wherein he again forged E.P.'s signature and used E.P.'s name without her consent.

36.     Despite obtaining approximately $15,100.00 rent relief benefits for E.P. from the VHDA, MERRYMAN evicted E.P. anyway, citing her unpaid rent. In total, MERRYMAN filed three legal actions to evict E.P., which have continued to affect E.P. and prevent her from obtaining housing.

37.     While E.P. rented a home from MERRYMAN, he repeatedly interfered with her right to lease and occupy the dwelling.  For instance, when the plumbing backed up into the house, MERRYMAN said it was "probably her weave."  MERRYMAN then told E.P. to "clean the house like when you were slaves."  MERRYMAN repeatedly called E.P. and her family "n*****s" and "trash."

38.     In or about 2017, after MERRYMAN refused to repair the property and continued to harass E.P., she told MERRYMAN that he should leave or he would get what's coming to him, (or words to that effect).  MERRYMAN became enraged and responded by retrieving a tire iron, and advancing on E.P., brandishing the tire iron as if he was going to strike her with it, while saying, "who's going to get what?"

39.     Also, during her tenancy, two of what E.P. described as MERRYMAN's "enforcers" came to demand rental money from E.P.  Both men pursuing E.P. for rent money were not only armed but also brandished firearms and acted in a threatening and hostile manner toward E.P.  While brandishing a firearm, one of the men told E.P. that it was time to "pay the big man."

<u>C.T.</u>

40.     C.T. is an African American man.

41.     In or about June 2018, C.T. rented a single-family home located at **** 30th Street, Newport News, Virginia, 23607, from MERRYMAN.  C.T. prepaid ten months of rent to move in the home totaling approximately $10,000.00.  When C.T. moved in, doors were missing, the water heater was broken, and the air conditioning did not work.  MERRYMAN promised to repair the

property and further said he would credit C.T.'s rent for any repairs he made himself or for which he paid contractors to make.

42.     C.T. paid a contractor to fix the water heater.  He also had his father travel from Philadelphia to fix the air conditioner.  When C.T. asked to deduct these costs from the rent in accordance with MERRYMAN's promise when getting him to sign the lease, MERRYMAN called C.T. a "n*****" and claimed he was going to raise the rent to $1,450.00 per month.

43.     After C.T. had made these and other reasonable requests to be reimbursed for repairs to MERRYMAN's property, MERRYMAN began making unannounced visits to the property, including inside the home in violation of state and local ordinances.

44.     When C.T. requested that MERRYMAN fix the air conditioner, MERRYMAN justified his refusal to make the repair by saying, "y'all should be used to that . . . you're black. You can take the heat a little bit."  When C.T. continued to request that MERRYMAN fix the air conditioning, MERRYMAN threatened his life.

45.     On or about August 23, 2018, MERRYMAN made an unannounced visit to the house.  C.T. asked him to leave.  MERRYMAN became enraged and swung a lawn mower at C.T. MERRYMAN then picked up a shovel, and while calling C.T. a "n*****," hit C.T. in the face with the shovel.

46.     MERRYMAN had C.T. evicted by falsely claiming he had not paid rent.  C.T. did not have records to substantiate his prepayment of rent, so he was forced to vacate the property.

<u>J.N. and M.E.</u>

47.     J.N. is an African American man.  M.E. is an African American woman.

48.     In or about April 2018, J.N. and M.E. rented a single-family home located at **** 30th Street in Newport News, Virginia 23607 from MERRYMAN.  When J.N. moved in, raw

sewage was leaking into the home, light fixtures were broken, the tile in the bathroom was cracked, the house was infested with rodents, and the floor was rotting so badly that it caused J.N. to fall through the floor into the crawl space and injure himself.  MERRYMAN promised to repair the property to induce J.N. and M.E. to lease from him.

49.     After J.N. and his family moved in, when he made reasonable requests to repair the property, MERRYMAN responded by saying things like, "you fix it yourself.  Get off your butt and go to work and get a job, you black n*****."

50.     The sewage backing into the house had a foul odor.   J.N. requested that MERRYMAN repair the plumbing.  MERRYMAN not only again refused to repair it but also responded by threatening J.N. saying he would beat J.N.'s "black ass" if he had to come over to the house.

51.     After the flooring problems worsened and MERRYMAN refused to repair them, J.N. reported the issues to the Newport News Department of Codes Compliance ("Codes Compliance").

52.     Codes Compliance is the local agency charged with protecting the health, safety, and general welfare of the public through the administration and uniform enforcement of laws and regulations related to land use, building construction and property maintenance.   Codes Compliance enforces the state's building code, the state's property maintenance code, and the city's zoning ordinances.

53.     In response to J.N.'s report, Codes Compliance inspected the condition of the property and found several violations.  MERRYMAN attempted to speak to the inspector for Codes Compliance during the inspection, but the inspector continued to document violations at the

property. This enraged MERRYMAN, and he physically assaulted J.N. by checking his shoulder into J.N.'s body during the inspection.

54.     During the time J.N. resided at **** 30th Street from in or about April 2018 through December 2020, he consistently paid his monthly rent.

55.     In or about December 2020, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, began working on an application for rent relief benefits for J.N. at the **** 30th Street address.

56.     On or about May 10, 2021, MERRYMAN submitted an application to the VHDA for approximately $12,150.00 in rent relief benefits for J.N. at the **** 30th Street address. J.N. did not know about, consent to, authorize, or otherwise benefit from this application. MERRYMAN assumed J.N.'s identity, using his personally identifying information on the rent relief application and signing the application as J.N. without his consent.

57.     In that application, MERRYMAN further falsely represented to the VHDA that J.N. continued to reside in the property through August 2021 and that he failed to pay rent for the period June 2020 through August 2021. MERRYMAN included a fabricated letter in the rent relief application from Outback Steakhouse that purported to lay off J.N.'s wife, M.E. The letter read: "G'Day Mate, we regretfully inform you, Ms. [M.E.], due to slower than usual business sales, we and most dining establishments will need to lay off wait staff until more business picks up." M.E. never worked at Outback Steakhouse.

58.     Another tenant, R.H. had moved into the property in or about February 2021 through the U.S. Department of Housing and Urban Development's Housing Choice Voucher Program ("Section 8"), as administered through the Newport News Redevelopment and Housing

Authority ("NNRHA").   The NNRHA paid the majority of R.H.'s monthly rent payments beginning, in part, in February 2021 and continuing through at least January 2022.

59.     The Section 8 program prohibits owners from charging or accepting, from the family or any other source, any payment for rent of the unit in addition to the rent to owner.   The ERA program similarly prohibits duplicative payments of any other federally funded rental assistance.

<u>L.G.</u>

60.     L.G. is an African American woman.

61.     In or about the summer of 2018 to in or about the summer of 2019, L.G. rented the single-family home located at **** 41st Street in Newport News, Virginia 23607 from MERRYMAN. When L.G. moved in, the property did not have a stove or a door on the refrigerator and needed to be treated for infestation by roaches and rodents. MERRYMAN promised to repair these problems to induce L.G. to rent the home, but never did so.

62.     When L.G. made reasonable requests to repair the property, MERRYMAN responded by calling L.G. a "n*****" and telling her that "you n*****s are always looking for something for nothing." MERRYMAN messaged L.G., "I have 23 people still owe me rent money from September, and Guess what!!!! They are all black!!!!" MERRYMAN frequently responded to L.G.'s basic housing requests with mocking, non-responsive messages like "black lives matter."

63.     After moving into the property, the HVAC system stopped working.   When L.G. reported the problem to MERRYMAN, he accused her of stealing the HVAC unit.

64.     In response to L.G. continuing to make reasonable requests to repair the home she was renting, MERRYMAN became frustrated in or about April 2019, and his harassment culminated in a threat to turn L.G. and her "black ass kids" into "potting soil."

65.     L.G. sought and obtained a protective order against MERRYMAN.  MERRYMAN responded to the order by, among other things, parking his vehicle just outside the prohibited radius of the order and making his presence known by staring at L.G. and her family.

V.L.

66.     V.L. is an African American woman.

67.     In or about March 2019, V.L. rented the single-family home located at *** Hickory Avenue, Newport News, Virginia, 23607, from MERRYMAN.  When V.L. moved in, the house's roof leaked, windows and the air conditioner were broken, and it had plumbing issues that caused V.L to incur a water bill for approximately $1,000.00.

68.     MERRYMAN promised to fix the issues with the property when V.L. inquired about renting the property, as part of his attempt to induce her to lease the property, but he later refused to do so after she had moved in.

69.     While V.L. and her family were renting from MERRYMAN, the furnace caught fire and the fire department had to respond to put out the flames.  MERRYMAN refused to help V.L. clean the house and remediate the smoke damage, which exacerbated her grandson's asthma.

70.     In or about December 2020, V.L. and her family purchased a home elsewhere and moved out of *** Hickory Avenue.

71.     On or about November 14, 2020, MERRYMAN applied to the VHDA for approximately $12,600.00 in rent relief benefits for V.L. at *** Hickory Avenue.  The claimed rent relief benefits were for July 2020 through May 2021, which covered, in part, a period of time that V.L. did not live in the property.

72.     Another tenant, J.H., moved into the property in or about January 2021.   The NNRHA paid the majority of J.H.'s monthly rent payments pursuant to the Section 8 program beginning, in part, in January 2021 and continuing through at least December 2021.

73.     V.L. was not aware of this application, did not consent to, authorize, or otherwise benefit from this application.   MERRYMAN assumed V.L.'s identity, using her personally identifying information on the rent relief application and signed the application as J.N. without her consent.

H.R.

74.     H.R. is an African American man.

75.     Since 2001, H.R. has been the Director of the City of Newport News Department of Codes Compliance.   In that capacity, he supervises approximately forty-one employees, many of whom are inspectors who ensure that properties are safe and comply with land-use regulations and other applicable rules.

76.     MERRYMAN owns dozens of rental homes in areas of downtown Newport News that are required to have a property inspection and rental inspection certificate from H.R.'s office.

77.     MERRYMAN is known to Codes Compliance and its employes due to his having had a long history of rental properties with frequent and repeated failures to comply with the city's rules and regulations and to meet standards of relating to the condition and habitability of the property.

78.     In or about July 2020, MERRYMAN complained to H.R. about one of his inspectors and about receiving citations for failing to comply with the city's regulations.   When H.R. advised MERRYMAN to seek advice from an attorney, MERRYMAN responded by e-mail, they're "having a BLM rally tonight" and "you wanna go[?]"

79.     In or about November 2019, MERRYMAN called H.R. to complain about his office condemning one of his properties because it was structurally compromised.   When H.R. refused MERRYMAN's request to ignore the problems with the property, MERRYMAN complained that Codes Compliance should condemn a different property.

80.     On or about November 20, 2019, MERRYMAN's harassment of H.R. in his capacity as an employee escalated.   MERRYMAN was angry about Codes Compliance condemning one of his properties.   H.R. told MERRYMAN that he could not be verbally abusive to his staff and that MERRYMAN was not going to raise his voice at him.   In response, MERRYMAN threatened H.R. that he would "beat [his] n***** ass."   MERRYMAN then came to City Hall and confronted H.R. in the lobby of the building as he was leaving work, trying to goad him into starting a fight.

<u>Ty.B.</u>

81.     Ty.B. is an African American woman.

82.     In or about December 2019, Ty.B. rented a single-family home located at **** 41st Street, Newport News, Virginia 23607 from MERRYMAN.

83.     The majority of Ty.B.'s rent was paid by the NNRHA through the Section 8 program.   For MERRYMAN to be eligible to receive payments from NNRHA for Ty.B., the property had to meet Housing Quality Standards relating to the condition of the property.

84.     The Housing Quality Standards for Section 8-assisted properties are published at Title 24, Code of Federal Regulations (CFR) § 982.401.   The CFR states that, "All program housing must meet the HQS performance requirements both at commencement of the assisted occupancy, and throughout the assisted tenancy."   Among other things, the Housing Quality Standards require that the dwellings have an oven, and a stove or range, and a refrigerator of

appropriate size for the family. Dwellings must have and be capable of maintaining a thermal environment healthy for the human body. There must be a safe system for heating the dwelling unit (and a safe cooling system, where present). The system must be able to provide adequate heat (and cooling, if applicable), either directly or indirectly, to each room, in order to assure a healthy living environment appropriate to the climate.

85.    Additionally, the Housing Quality Standards require that the dwelling unit must be structurally sound. The structure must not present any threat to the health and safety of the occupants and must protect the occupants from the environment. The ceilings, walls, and floors must not have any serious defects such as severe bulging or leaning, large holes, loose surface materials, severe buckling, missing parts, or other serious damage. The roof must be structurally sound and weathertight. The exterior wall structure and surface must not have any serious defects such as serious leaning, buckling, sagging, large holes, or defects that may result in air infiltration or vermin infestation. Further, the unit must be in sanitary condition and be free of vermin and rodent infestation.

86.    Ty.B.'s rental home was in very poor condition, and needed a lot of work at the time she moved in. She typically would not have rented the property in the condition it was in, but she had a new daughter and needed a place to live quickly. MERRYMAN told Ty.B. that if she paid for the work that the house needed, he would deduct what she paid from the rent. Ty.B. said at the time she moved in, there was a plumbing leak in the bathroom, and the ceilings leaked when it rained. Ty.B. stated the heat and air conditioning worked on the first day she lived in the property, but never worked again after that. She had to purchase space heaters and air conditioning window units with her own money. Additionally, the planks on the front porch were "popping," and there were no locks on the doors.

87.     On or about December 3, 2019, MERRYMAN executed a Housing Assistance Payments (HAP) Contract with the NNRHA.  Among other things, MERRYMAN certified that as the owner of the property he would maintain the contract unit and premises in accordance with the Housing Quality Standards.

88.     In documentation submitted to the NNRHA, MERRYMAN made a number of material, false representations to obtain housing benefit payments.  He falsely represented that the property had a functioning heating and cooling system, a working oven, microwave, washing machine, dryer, garbage disposal, ceiling fans, a dishwasher, and a driveway.  In fact, as MERRYMAN then and there well knew, the property did not have a microwave, a garbage disposal, a washer and dryer, ceiling fans, or a driveway.  The "Proposed Section 8 Unit Information" form showed that the property was built in 1983.  According to the Newport News Real Estate Assessment website, the property was built in 1930.  At the bottom of the Proposed Section 8 Unit Information form, MERRYMAN falsely characterized it, in summary, as a "Very Nice."

89.     In reality, when Ty.B. moved into the property, it was in poor condition.  In fact, the NNRHA's inspection of the property on December 3, 2019, noted several items that failed and needed to be corrected.  Those items included, correcting the cause of a water leak that resulted in water stains, correcting floor tripping hazard at the front entrance, correcting the cause for water leaking underneath kitchen sink, correct GFI switch that does not function.

S.F.

90.     S.F. is a white woman.

91.     In or about December 2019, S.F. rented the single-family home located at ** Salem Street, Hampton, Virginia, 23669, from MERRYMAN.

92. S.F., at the time, had been employed in security services for a hotel.  In or about the summer of 2020, S.F. lost her employment as a result of the COVID-19 pandemic.

93. Without steady pay, S.F. fell behind on her rent.  MERRYMAN began to direct racially-based harassment at S.F., telling her things such as, "F that you're still working and you're white, don't give me that n***** shit."  He also regularly called S.F. a "n***** lover" because her best friend was African American.  S.F. asked MERRYMAN what race had to do with it. MERRYMAN responded, "cause all my white people are paying me and 18 n*****s aren't."

94. MERRYMAN sent S.F. the following messages:

| MERRYMAN | Your chosen to be a n*****<br>That's ok<br>You'll see who the real n***** is |
|---|---|
| S.F. | Are you threatening me?! |
| MERRYMAN | Take it how you want to n*****<br>The cops have been there a total of 9 times since you've lived there |
| S.F. | That's a lie |
| MERRYMAN | Your and your crazy wife are the real problem |
| S.F. | I'm done arguing with ignorance I'll see you in court |
| MERRYMAN | Lol ok<br>Just like a n*****<br>Pay your bills like other white people<br>But then again you have a bunch of n***** friends it seems like<br>So maybe you're a n***** lover<br>Kinda funny when you don't have any roommates you run out of money ....... |

95. In or about the fall of 2020, S.F. attempted to apply to VHDA for rent relief benefits. Her application was denied because she needed certain documentation from MERRYMAN such as a ledger of rent payments that she did not have and MERRYMAN would not give her.

96.     MERRYMAN wanted to apply for more rent relief payments and demanded S.F. work for him or face eviction.  S.F. agreed to do so.

97.     S.F. struggled to compile applications for MERRYMAN's properties because he did not have the necessary paperwork like leases and ledgers of rent payments for his properties.

98.     S.F. worked in MERRYMAN's office where he had sticky notes on the wall that said, "don't attack anybody today, you can't go back to jail."

99.     S.F. contacted tenants to have them sign rent relief applications for MERRYMAN, but they refused.  Some of the tenants refused to consent because they did not trust MERRYMAN.  Others did not want to see MERRYMAN compensated by the government for properties in such poor condition.  S.F. then witnessed MERRYMAN forge a rent relief application.

100.    On or about June 22, 2021, MERRYMAN applied to the VHDA for approximately $8,800.00 in rent relief benefits for S.F. at the ** Salem Street address.  S.F. was not aware of this application, did not consent to, or otherwise benefit from this application.  MERRYMAN assumed S.F.'s identity, using her personally identifying information on the rent relief application and forging her signature the application, all without her consent.

101.    MERRYMAN misspelled S.F.'s name on the rent relief application.

F.D.

102.    F.D. is an African American woman.

103.    In or about April 2020, F.D. rented the single-family home located at *** 18th Street, Newport News, Virginia 23607 from MERRYMAN.  The property was in terrible condition.  When F.D. moved in, there were stains on the carpeting, a clogged sink full of water, a clogged toilet full of human waste, a ceiling light hanging by the wires, and broken windows.  Before moving in, F.D. had only seen the outside of the property, which seemed fine.  When she

moved in, she found all of these problems. When she asked MERRYMAN about them, he told her to take him to court.

104. In or about the winter of 2021, F.D. lost her job as a housekeeper in Colonial Williamsburg because of the COVID-19 pandemic. She fell behind on her rent.

105. MERRYMAN responded by harassing F.D. He would call F.D. a "black n*****" and "black bitch." He made generalized references to black women with comments like, "you black bitches, you all get here and don't pay your money, you're getting out of here."

106. In or about October 19, 2020, MERRYMAN's threatened F.D. with a string trimmer. MERRYMAN came to F.D.'s home and called her phone. MERRYMAN demanded rent and refused to repair the property as requested by F.D. When F.D. opened the front door, she observed MERRYMAN wielding the string trimmer, which was on at the time. MERRYMAN threatened F.D., saying "what are you going to do you black bitch, what you going to do now? I'm here, you can't do nothing with me."

107. In or about November 2020, F.D. worked with MERRYMAN to complete an application for rent relief benefits from the VHDA. He never communicated to her whether he received any benefits or submitted the application. On or about May 10, 2021, MERRYMAN applied to the VHDA for approximately $13,770.00 in rent relief benefits for F.D. at the *** 18th Street address.

108. On the benefit application submitted on or about May 10, 2021, MERRYMAN falsely represented that F.D. had not paid rent from in or about July 2020 through in or about June 2021. This was untrue. MERRYMAN continued to demand F.D. make payments to him during this period.

109.    Despite obtaining rent relief benefits for F.D. from the VHDA, MERRYMAN evicted F.D., citing her unpaid rent for the same period.  This was in violation of the Landlord Agreement section of the Rent Relief application, which required MERRYMAN to agree, "I acknowledge and agree to the requirement that I must not evict the renter for non-payment of the rent associated with any of the months for which the rent relief payment is made."

110.    The rent relief benefits MERRYMAN received for F.D. were for the time-period July 2020 through September 2021.  Concurrent with F.D.'s eviction, MERRYMAN received a judgment against her for $20,400 plus late fees totaling $2,047 and attorney fees of $5,610.  The judgment covered 17 months of F.D.'s rent payments, including at least seven that MERRYMAN already received rent relief benefits for.

E.S.

111.    E.S. is an African American man.

112.    E.S. owned a concrete construction business based in Hampton, Virginia.  He worked in the concrete construction business for more than 40 years.

113.    Individual 1 hired MERRYMAN to build a new driveway, but he failed to complete the job in a timely fashion.  MERRYMAN excavated Individual 1's old driveway, but he did not build a new one.  Individual 1 hired E.S. to finish the job and construct his new driveway.

114.    On or about July 8, 2020, shortly after E.S. finished the project for Individual 1, he received a call from a phone number ending in 2700.  MERRYMAN identified himself on the call.  MERRYMAN repeatedly threatened E.S., stating "You stole, you stole my job, n*****, and I will kill your ass, n*****.  I'm going to take you to court for stealing my job, n*****."

115.     MERRYMAN was not satisfied with the above threats, though, and he immediately called back to threaten him another time, telling E.S. to "watch your back, n*****, because I'm going to kill your n***** ass."

116.     E.S. was worried for his safety, so he sought and obtained a protective order against MERRYMAN.  Notwithstanding that order, in or about March 2021, MERRYMAN came to a different jobsite where E.S. was working and stared at him and his team, which violated the protective order obtained by E.S.

117.     After MERRYMAN threatened E.S. in July 2020, he did not bid on or work jobs where MERRYMAN was involved for fear that MERRYMAN would kill him.

E.D. and A.D.

118.     E.D. is an African American woman.  A.D. is an African American man.

119.     In or about October 2020, E.D. and A.D. rented a single-family home located at *** 17th Street, Newport News, Virginia 23607 from MERRYMAN.  When E.D. and A.D. moved in, the floor was at risk of collapsing and there was a sizeable hole in the floor into the crawl space under the house.  The home also had mold that caused respiratory issues for the minor daughter of E.D. and A.D.

120.     E.D. and A.D. repeatedly asked MERRYMAN to repair the property to make it habitable.  MERRYMAN refused and belittled E.D. and A.D by using racial slurs.

121.     In or about December 2020, E.D. and A.D. vacated the property out of concern of the health issues their minor daughter was experiencing because of the mold.

122.     After E.D. and A.D. left the property, they were contacted by a representative of MERRYMAN who asked them to sign paperwork for rent relief benefits.  They refused to do so, as they did not want to see him unfairly compensated for the property.

123.    On or about May 10, 2021, MERRYMAN applied to the VHDA for approximately $9,700.00 in rent relief benefits for E.D. and A.D. at the *** 17th Street address. Neither E.D. nor A.D. consented to, authorized, or otherwise benefited from this application. MERRYMAN assuming the identity of E.D. and A.D., using their names and forging their signatures on the rent relief application, all without their consent.

124.    After E.D. and A.D. refused to apply for rent relief, MERRYMAN mocked them and told them that he was "still getting his money" by applying for rental assistance with or without their consent.

<u>E.M.</u>

125.    E.M. is an African American woman.

126.    In or about 2021, MERRYMAN hired E.M. to help him apply for rent relief benefits from VHDA. E.M. was a landlord herself and had had success applying for rent relief benefits in that capacity and as an advisor to others.

127.    MERRYMAN bragged to E.M. about using a backhoe to evict tenants illegally by removing the waterline to condemn properties. Because all residences must have running water to be habitable, by removing the property's access to running water, MERRYMAN made it uninhabitable and could trigger its condemnation.

128.    E.M. reviewed MERRYMAN's business records in connection with facilitating various rent relief applications. E.M. found notes in his business files about which tenants had "Black Lives Matter" signs and indications that MERRYMAN would attempt to damage or remove them.

129.   E.M.'s review of MERRYMAN's files revealed deficiencies in his recordkeeping. Many of his property files did not contain leases, addenda to renew leases, rental ledgers, or other basic documentation.

130.   MERRYMAN agreed to pay E.M. a percentage commission for the rent relief benefits she obtained for his properties, but he did not follow through on that promise. MERRYMAN paid E.M. approximately $14,000.00 for her work, but that was not the full sum of the money he owed her.

131.   E.M. asked MERRYMAN what to do if she could not reach his tenants or if they refused to sign the rent relief paperwork.  He directed her to falsify the paperwork and submit the applications anyway.

132.   One at least one occasion, E.M. witnessed MERRYMAN forge a tenant's signature on a rent relief application.

133.   On another occasion, MERRYMAN directed E.M. to put together a rent relief application for a property where he was already paid, in part, with rent subsidies from the Section 8 program.

<u>J.I.</u>

134.   J.I. is an African American woman.

135.   In or about August 2021, J.I. rented a single-family home located at *** Blair Avenue, Newport News, Virginia 23607 from MERRYMAN.

136.   J.I.'s rent was paid, in part, by the NNRHA through the Section 8 program.  For MERRYMAN to be eligible to receive payments from NNRHA for J.I., the property had to meet certain requirements ("Housing Quality Standards") relating to the condition of the property.

137.    On or about July 21, 2021, MERRYMAN executed a Housing Assistance Payment (HAP) Contract with the NNRHA.  Among other things, MERRYMAN certified that as the owner of the property he would maintain the contract unit and premises in accordance with the Housing Quality Standards.  The HAP Contract stated, "Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

138.    In documentation submitted to the NNRHA, MERRYMAN made a number of material, false representations to obtain housing benefit payments.  He falsely represented that the property had a functioning heating and cooling system, a working oven, microwave, washing machine, and dishwasher.  In fact, as MERRYMAN then and there knew, the appliances did not function as he represented.  At the bottom of the Proposed Section 8 Unit Information form, MERRYMAN falsely characterized it, in summary, as a "very nice house."  On the form, MERRYMAN reported that the house was built in 1978 and renovated in 2021.  According to the City of Newport News, the property was built in 1920.

139.    In reality, when J.I. moved into the property, it was in poor condition.  In addition to the non-functioning appliances described above, there were vermin in the attic and numerous dangerous structural issues, including a rotting floor, the front porch resting on unsteady cement blocks, cracks in the foundation, and exposed insulation.

140.    To induce J.I. to rent the premises, MERRYMAN promised to repair these issues and make the property habitable, but he did not do so.  The NNRHA later began to withhold rent benefits from MERRYMAN because he did not complete the necessary repairs per the terms of the contract, including within the specified time period.

141.    As a result of his anger related to the withheld NNRHA funds, MERRYMAN began harassing J.I. and otherwise interfering with her living at the property, including her reasonable, quiet enjoyment of the same.  He threatened to shut off the utilities.  He entered the property without her consent.  He made disparaging, false comments that she was lazy and needed to work for a living because she was eligible for housing assistance.  When J.I. would explain how his assumptions were incorrect, he would brush her off with mocking comments like "black lives matter."

T.D.

142.    T.D. is an African American woman.

143.    In or about November 2019, T.D. rented the single-family home located at **** 16th Street, Newport News, Virginia, 23607.  T.D. had previously rented the same unit a few years prior from MERRYMAN, and did not want to return, but felt compelled to do so because she had limited options for housing.

144.    When T.D. moved in, there was mold throughout the house and exposed wiring. When T.D. made reasonable requests to MERRYMAN to repair the property, he responded with comments like, "y'all black people never want to pay rent."

145.    In 2020, T.D. lost her job during the pandemic.  When she informed MERRYMAN, he said, "That's why I'm putting you n*****s out."

146.    T.D. attempted to apply for rent relief benefits from VHDA herself.  When she notified MERRYMAN, he told her to bring the application to his office.  After reviewing the paperwork, he offered to hire T.D. and pay her $20 per hour to work on rent relief applications for his other properties.

147.   When T.D. reviewed MERRYMAN's business records, she found that many of the properties did not have leases or other basic documentation.  MERRYMAN directed T.D. to "make leases for the properties."

148.   MERRYMAN also directed T.D. to forge the signatures of tenants on the leases. When T.D. refused to do so, MERRYMAN told T.D. he would forge the signatures himself.

149.   T.D. worked for approximately 40 hours on rent relief applications for MERRYMAN, but he never compensated her for those hours worked, despite promising to do so.

E.W.

150.   E.W. is an African American woman.

151.   In or about December 2019, E.W. rented the single-family home located at *** Glendale Road, Hampton, Virginia, 23661, from MERRYMAN.  The Glendale Road house was in serious disrepair when E.W. took possession.  Among other things, the toilet in the bathroom did not work, there was a hole in the wall patched with paper plate, and bricks were falling off the house.  MERRYMAN promised to repair the property or credit E.W.'s rent for any repairs she made herself.

152.   When E.W. asked MERRYMAN to make reasonable repairs to the property after she had moved in, he responded with mocking comments and attempted to evict her by condemning the property.

153.   When E.W. was unsuccessful at getting the repairs MERRYMAN had promised, she called Codes Compliance about the condition of the property.  When they put violation stickers on the home, MERRYMAN illegally removed them.

154.   MERRYMAN also became angry when he learned that E.W. called Codes Compliance on him, so he destroyed the waterline to the house with a backhoe.

155.    On or about May 10, 2021, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, applied to the VHDA for approximately $18,000.00 in rent relief benefits for E.W. at *** Glendale Road, Hampton, Virginia 23661.  E.W. did not consent to, authorize, or otherwise benefit from this application.  MERRYMAN assumed E.W.'s identity, using her name and forging E.W.'s signature on the rent relief application, all without E.W.'s consent.

156.    The final application submitted contained several mistakes making it clear that it was evident that MERRYMAN and not E.W. completed the application.   For instance, MERRYMAN misspelled E.W.'s own name on the rent relief application and misstated her age. MERRYMAN also wrongly listed her as having a dependent child in the residence.

157.    MERRYMAN falsely represented to the VHDA that E.W. lost her job at a restaurant during the pandemic.  In fact, E.W. did not work for a restaurant.

Ta.B.

158.    Ta.B. is an African American woman.

159.    In or about January 2021, Ta.B. rented a single-family home located at **** 30th Street, Newport News, Virginia 23607 from MERRYMAN.

160.    All of Ta.B.'s rent was paid by the NNRHA through the Section 8 program.  For MERRYMAN to be eligible to receive payments from NNRHA for Ta.B., the property had to meet Housing Quality Standards relating to the condition of the property.

161.    Contrary to the Housing Quality Standards, the house was infested with rodents and neither the heat nor the air conditioning worked.  In fact, the rodents got so bad, Ta.B. had to move her family to a hotel.

162.    On or about January 14, 2021, MERRYMAN caused the execution of a HAP Contract with the NNRHA on his behalf.  Among other things, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, certified that the property met and would be maintained in accordance with the Housing Quality Standards.

163.    In documentation submitted to the NNRHA, MERRYMAN made a number of material, false representations to obtain housing benefit payments.  He falsely represented that the property had a functioning heating and cooling system, a stove and a refrigerator.  In fact, as MERRYMAN then and there knew, the property did not have a functioning heating and cooling system, stove or refrigerator.  The Proposed Section 8 Unit Information form showed that the property was built in 1980.  According to the Newport News Real Estate Assessment website, the property was built in 1940.  At the bottom of the Proposed Section 8 Unit Information form, MERRYMAN falsely characterized it, in summary, as a "Very Nice Unit."

J.P.

164.    J.P. is a Puerto Rican man who identifies as Hispanic and is married to an African American woman.

165.    In or about September 2022, J.P. rented the single-family home located at **** Shell Road, Hampton, Virginia 23661 from MERRYMAN.  When J.P. moved in, the cabinets were infested with cockroaches. There was no stove or refrigerator.  The carpets were dirty.  There was black mold in the house.  And the water heater was broken.

166.    MERRYMAN told J.P. he would repair the property when J.P. was deciding whether to lease from him, but after J.P. moved in, MERRYMAN refused to make the requested repairs.  When J.P. asked for repairs after moving into the property, MERRYMAN became

frustrated and made comments like calling J.P. a "n**** lover" (a reference to his African American wife).

167.    On or about December 13, 2022, J.P. went to MERRYMAN's office to make a reasonable request that he fix the water heater.  MERRYMAN violently refused, telling J.P. to "get the f*** out" and throwing an Allen wrench at him.

168.    MERRYMAN then grabbed a chainsaw and threatened J.P.  MERRYMAN cranked the chainsaw as if he was going to use it on J.P.  MERRYMAN struck J.P. with the blade of the saw (while it was off) approximately four times while calling J.P. a "n*****," "sp*c," "dumb mother f*****," and "crackhead."

S.M.

169.    S.M. is an African American woman.

170.    In or about December 2022, S.M. rented single-family home located at **** 42nd Street, Newport News, Virginia, 23607, from MERRYMAN.  When S.M. moved into the 42nd Street property, sewage was backing up into the home, there was no functioning bathroom in the home, the sink was leaking, and there were holes in the exterior of the home to the outside.

171.    While inducing S.M. to lease the property, MERRYMAN made materially false representations to her that he would repair the property before she moved in.  In reliance on those false representations, S.M. paid MERRYMAN $4,500.00 in upfront costs to move into the property.  The subsequent monthly rent was approximately $1,350.00.

172.    S.M. soon withheld paying rent because there were so many issues with the property, including the repairs MERRYMAN had failed to make, notwithstanding his earlier promises.  MERRYMAN refused to fix anything but still demanded to be paid rent.  For instance, on one occasion, he came to the house and told S.M. they needed to reach an understanding about

the rent. While prominently displaying a firearm on his lap, MERRYMAN demanded that S.M. sign a promissory note to pay him rent. Fearing for her life, S.M. did so.

173. When S.M. made reasonable requests to repair the property, MERRYMAN called S.M. a "n****," made discriminatory comments about "y'all n*****s," and made comments about how "you people don't work" and want to "live off welfare."

174. MERRYMAN subsequently sued to evict S.M. He called demanding rent and S.M. told MERRYMAN to speak to her attorney. MERRYMAN responded threateningly, "Watch. You're going to see. You're going to see what's going to happen." MERRYMAN said he would turn off the water and call the authorities to take away S.M.'s children.

<u>G.G.</u>

175. G.G. is an African American man.

176. In or about October 2022, G.G. rented the single-family home located at *** Vaughan Avenue, Hampton, Virginia, 23661 from MERRYMAN. When G.G. and his family first saw the home, there was no functioning stove, no working refrigerator, the bathroom tub had a hole, the bathroom mirror was broken, and the shower drain was badly stained.

177. MERRYMAN falsely promised G.G. that he would repair the problems to induce G.G. to sign a lease and pay him upfront fees, including an initial deposit of approximately $1,000 on or about October 14, 2022, a move-in deposit of approximately $1,600.00 on or about October 27, 2022, and a combination of rent/deposit of approximately $1,150.00 on or about November 9, 2022. All of these payments by G.G. to MERRYMAN were sent through the mobile payment service, Cash App.

178. When G.G. made reasonable requests to repair the property, MERRYMAN responded with comments like, "you people, man, it's always the black ones that got to have the

problem with moving in." He also made non-responsive comments about "black lives matter" when discussing basic housing requests.

179. In or about February 2023, MERRYMAN made an unannounced visit to the property with a crew of approximately five men. Without knocking on the door or otherwise notifying G.G. of their presence, MERRYMAN and the crew of men went into the backyard and began retrieving a pile of bricks and disassembling bricks that had been arranged as a fire pit.

180. When G.G. confronted MERRYMAN about the unannounced visit, he became angry. When G.G. asked MERRYMAN why he would spend time on the bricks as opposed to fixing some of the more serious problems in the house, he responded, "man, these freaking black people, they always want something extra, man."

181. When G.G. came closer, MERRYMAN asked one member of his crew, "hey, you still got your gun on you?" The man said he did and stood next to MERRYMAN with his hand behind his back, as if he was ready to draw the weapon. Afraid he would be shot or attacked, G.G. retreated back in the house briefly before coming outside again. MERRYMAN went over to the firepit and retrieved a brick, which he threateningly waved at G.G. while saying, "you black motherf******. Y'all always want something." As MERRYMAN departed the property, he yelled, "f***ing n*****s, f***ing n*****s."

182. A few weeks after the above incident, G.G. and his wife went to MERRYMAN's office to obtain a copy of his lease. MERRYMAN had turned off the electricity to the property, and G.G. needed a lease to have the utilities in his name. Rather than turn over the lease, MERRYMAN became angry and gestured as if he was going to retrieve a firearm from his desk. Victim G.G.'s wife fled the office in fear. G.G. challenged MERRYMAN and asked if he was

seriously going to shoot him.  Instead of a firearm, MERRYMAN retrieved a barbeque lighter from the desk.

## COUNTS ONE THROUGH TEN
(Wire Fraud)

THE GRAND JURY CHARGES THAT:

1.      The factual allegations contained in the General Allegations section, including the description of the Scheme and Artifice to Defraud, are incorporated herein as if set out in full.

2.      From in or about November 2020 through in or about August 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and elsewhere, DAVID L. MERRYMAN, the defendant herein, aided and abetted by others known and unknown to the Grand Jury, with intent to defraud, knowingly devised and intended to devise the aforesaid scheme and artifice to defraud and for obtaining property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice and the execution thereof, operated in substance as follows and as further described in the General Allegations

3.      On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, DAVID L. MERRYMAN, the defendant herein, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property through materially false pretenses, representations, and promises as described above, did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate commerce, certain signs, signals, and sounds as set forth in the table below, to and from and from and through computers and terminals in the Eastern District of Virginia from, to, and through computers and terminals outside of the Commonwealth of Virginia.

| Count | Date (on or about) | Wire Transmission |
|---|---|---|
| 1 | February 3, 2020 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, defrauded M.E. by making false promises to repair her rental property in order to induce her to make payments to him.  MERRYMAN negotiated a money order from M.E., which he received under the foregoing false pretenses.  MERRYMAN negotiated the money order at Langley Federal Credit Union, resulting in the interstate transmission of information between Virginia and computers outside Virginia. |
| 2 | November 14, 2020 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $12,600 in rent relief benefits purportedly on behalf of V.L. for rent for *** Hickory Avenue in Newport News, Virginia, 23607.  This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| 3 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $12,150.00 in rent relief benefits purportedly on behalf of J.N. for rent for **** 30th Street in Newport News, Virginia 23607.  This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| 4 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $13,770.00 in rent relief benefits purportedly on behalf of victim F.D. for rent for *** 18th Street, Newport News, Virginia 23607.  This resulted in an interstate wire of funds from VHDA to MERRYMAN. |

| 5 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $9,700.00 in rent relief benefits purportedly on behalf of E.D. and A.D. for rent for *** 17th Street, Newport News, Virginia 23607. This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| --- | --- | --- |
| 6 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown to the grand jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $15,100.00 in rent relief benefits purportedly on behalf of E.P. for rent for*** 31st Street in Newport News, Virginia, 23607. This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| 7 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $18,000.00 in rent relief benefits purportedly on behalf of E.W. for rent for *** Glendale Road, Hampton, Virginia 23661. This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| 8 | June 22, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, submitted an inaccurate, unauthorized, and fraudulent electronic rent relief application to the Virginia Housing Development Authority via the internet in which he sought approximately $8,800.00 in rent relief benefits purportedly on behalf of S.F. for rent for ** Salem Street, Hampton, Virginia, 23669. This resulted in an interstate wire of funds from VHDA to MERRYMAN. |
| 9 | September 1, 2022 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, defrauded S.M. by making false promises to repair her rental property in order to induce her to make payments to him. MERRYMAN negotiated a money order from S.M., which he received under the foregoing false |

| | | |
|---|---|---|
| | | pretenses.  MERRYMAN negotiated the money order at Langley Federal Credit Union, resulting in the interstate transmission of information between Virginia and computers outside Virginia. |
| 10 | October 27, 2022 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, defrauded G.G. by making false promises to repair his rental property in order to induce him to make payments to him.  G.G. paid MERRYMAN a move-in deposit with the mobile payment service Cash App, resulting in the interstate transmission of information between Virginia and computers outside of Virginia. |

(All in violation of Title 18, United States Code, Sections 1343 and 2.)

COUNTS ELEVEN THROUGH FOURTEEN
(Interference with Housing)

THE GRAND JURY CHARGES THAT:

1.    The factual allegations contained in the General Allegations section are incorporated herein as if set out in full.

2.    On or about the dates and in the manner set forth below, in the Eastern District of Virginia, DAVID L. MERRYMAN, the defendant herein, aided and abetted by others known and unknown to the Grand Jury, did by force and threat of force, willfully injure, intimidate, and interfere with, and attempt to injure, intimidate and interfere with, the victims set forth below, because of their race and color, and because the victims were renting, financing and occupying a dwelling, or negotiating for the rental, financing or occupation of any dwelling:.

| Count | Date (in or about) | Victim | Interference with Housing by Force and Threats of Force |
|---|---|---|---|
| 11 | April 2019 | L.G. | In response to L.G.'s requests to repair her rental home, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, threatened to turn L.G. and her "black ass kids" into "potting soil" by "[send]ing whoever he wants." |
| 12 | May 2019 | J.N. | In response to J.N. calling Codes Compliance to inspect his rental home due to structural issues with the flooring, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, threatened to beat J.N.'s "black ass" and physically assaulting him with a shoulder check. |

| 13 | December 13, 2022 | J.P. | In response to J.P.'s request to restore hot water to his rental home, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, physically attacked J.P. with a chainsaw while calling him a "n*****," "sp*c," "dumb mother f*****," and "crackhead."  This offense involved the use and threatened use of a dangerous weapon. |
| 14 | February 2023 | G.G. | In response to G.G.'s request to make repairs to his rental home, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, threatened G.G. with his employee's firearm and by wielding a brick while calling him a "black mother f*****" and a "n*****."  This offense involved the use and threatened use of a dangerous weapon. |

(All in violation of Title 42, United States Code, Section 3631 and Title 18, United States Code, Section 2.)

<u>COUNTS FIFTEEN AND SIXTEEN</u>
(Interstate Communications with Threats to Injure)

THE GRAND JURY FURTHER CHARGES THAT:

1.      The factual allegations contained in the General Allegations section are incorporated herein as if set out in full.

2.      On or about the dates and in the manner set forth below, in the Eastern District of Virginia and elsewhere, DAVID L. MERRYMAN, the defendant herein, knowingly and willfully did transmit in interstate and foreign commerce, the following threatening communications to injure and murder.

| Count | Date (in or about) | Victim | Interstate Communication with Threat to Injure |
|-------|--------------------|--------|------------------------------------------------|
| 15 | November 18, 2019 | H.R. | While on a call routed in interstate commerce, MERRYMAN threatened H.R. that he would "do whatever he wants" and "beat [his] n***** ass." |
| 16 | July 8, 2020 | E.S. | While on a call routed in interstate commerce, MERRYMAN threatened E.S., "You stole, you stole my job, n*****, and I will kill your ass, n*****." MERRYMAN threatened further, "watch your back n*****, because I'm going to kill your n***** ass." |

(All in violation of 18 U.S.C. § 875(c) and 2.)

## COUNTS SEVENTEEN THROUGH TWENTY-TWO
(Theft of Government Money)

THE GRAND JURY FURTHER CHARGES THAT:

1.      The factual allegations contained in the General Allegations section are incorporated herein as if set out in full.

2.      On or about the dates and in the manner set forth below, in the Eastern District of Virginia, DAVID L. MERRYMAN, the defendant herein, aided and abetted by others known and unknown to the Grand Jury, willfully and knowingly did steal, purloin, and convert to his use without authority the government money and property set forth below, of a value exceeding $1,000.00, of the goods and property of the United States.

| Count | Date (on or about) | Theft of Government Property |
|-------|--------------------|-----------------------------|
| 17 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $12,150.00 in rent relief benefits for tenant J.N. as purported rent due and owing for the lease of **** 30th Street in Newport News, Virginia 23607. |
| 18 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $13,770.00 in rent relief benefits for F.D. as purported rent due and owing for the lease of *** 18th Street, Newport News, Virginia 23607. |
| 19 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $9,700.00 in rent relief benefits for E.D. as purported rent due and owing for the lease of *** 17th Street, Newport News, Virginia 23607. |

| 20 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $15,100.00 in rent relief benefits for E.P. as purported rent due and owing for the lease of *** 31st Street in Newport News, Virginia, 23607. |
| 21 | May 10, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $18,000.00 in rent relief benefits for E.W. as purported rent due and owing for the lease of *** Glendale Rd, Hampton, Virginia 23661. |
| 22 | June 22, 2021 | MERRYMAN, aided and abetted by others known and unknown, embezzled, stole, and converted to his use approximately $8,800.00 in rent relief benefits for S.F. as purported rent due and owing for the lease of ** Salem Street, Hampton, Virginia, 23669. |

(All in violation of Title 18, United States Code, Sections 641 and 2.)

## COUNT TWENTY-THREE THROUGH TWENTY-SIX
### (Housing and Urban Development Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1.     The factual allegations contained in the General Allegations section are incorporated herein as if set out in full.

2.     On or about the dates and in the manner set forth below, in the Eastern District of Virginia, DAVID L. MERRYMAN, the defendant herein, aided and abetted by others known and unknown to the Grand Jury, made, passed, uttered, and published false statements, as set forth below, all of which were false as he then and there knew, for the purpose of influencing the Department of Housing and Urban Development to approve the Newport News Redevelopment & Housing Authority to issue payments to MERRYMAN through the Housing Choice Voucher Program.

| Count | Date (on or about) | Housing and Urban Development Fraud |
|-------|--------------------|-------------------------------------|
| 23 | December 3, 2019 | To obtain housing assistance benefits from the Department of Housing and Urban Development, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, falsely represented that the property being rented by Ty.B. located at **** 41st Street, Newport News, Virginia 23607, met and would be maintained to meet certain Housing Quality Standards, had a functioning heating and cooling system, a working oven, microwave, washing machine, dryer, garbage disposal, ceiling fans, a dishwasher, and a driveway. |
| 24 | January 14, 2021 | To obtain housing assistance benefits from the Department of Housing and Urban Development, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, falsely represented that the property being rented by Ta.B. located at **** 30th Street, Newport News, Virginia 23607, met and would be maintained to meet certain Housing Quality Standards, had a functioning heating and cooling system as well as a working stove and refrigerator. |

| 25 | February 24, 2021 | MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, falsely represented that he would not receive payments, from the tenant or any other source, for the property being rented by R.H. located at **** 30th Street in Newport News, Virginia 23607, to obtain payments from the Department of Housing and Urban Development under the Section 8 program.  In fact, he received rent relief benefits for J.N. from the VHDA for the same period. |
| --- | --- | --- |
| 26 | July 21, 2021 | To obtain housing assistance benefits from the Department of Housing and Urban Development, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, falsely represented that the property being rented by J.I. located at *** Blair Avenue, Newport News, Virginia 23607, met and would be maintained to meet certain Housing Quality Standards, had a working heating system, air conditioner, oven, microwave, clothes washer, and dishwasher |

(All in violation of Title 18, United States Code, Sections 1010 and 2.)

<u>COUNTS TWENTY-SEVEN THROUGH THIRTY</u>
(Aggravated Identity Theft)

THE GRAND JURY FURTHER CHARGES THAT:

1.      The factual allegations contained in the General Allegations section are incorporated herein by reference as if set out in full.

2.      On or about the dates and in the manner set forth below, in the Eastern District of Virginia and elsewhere, DAVID L. MERRYMAN, the defendant herein, aided and abetted by others known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally transfer, possess, and use, without lawful authority, a means of identification of another during and in relation to felony violations of provisions contained in Chapter 63 of Title 18, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343.

| Counts | Date (on or about) | Description of Transaction | Felony Violation(s) |
|--------|--------------------|----------------------------|---------------------|
| 27 | May 10, 2021 | Without lawful authority, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, used J.N.'s name, other information and forged her signature to obtain by fraud rent relief benefits from the VHDA. | 18 U.S.C. § 1343; 18 U.S.C. § 641 (ref. Counts 3, 17) |
| 28 | May 10, 2021 | Without lawful authority, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, used E.D.'s name, other information and forged her signature to obtain by fraud rent relief benefits from the VHDA. | 18 U.S.C. § 1343; 18 U.S.C. § 641 (ref. Count 5) |
| 29 | May 10, 2021 | Without lawful authority, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, used E.P.'s name, other information and forged her signature to obtain by fraud rent relief benefits from the VHDA. | 18 U.S.C. § 1343; 18 U.S.C. § 641 (ref. Counts 6, 20) |

| 30 | May 10, 2021 | Without lawful authority, MERRYMAN, aided and abetted by others known and unknown to the Grand Jury, used E.W.'s name, other information and forged her signature to obtain by fraud rent relief benefits from the VHDA. | 18 U.S.C. § 1343; 18 U.S.C. § 641 (ref. Counts 7, 21) |
|----|----|----|----|

(All in violation of Title 18, United States Code, Sections 1028A and 2.)

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.      The defendant, if convicted of any of the violations alleged in Counts One through Ten and Fifteen through Twenty-Two of this indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2.      If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).)

UNITED STATES v. DAVID L. MERRYMAN, et al., 4:24-cr- 4

Pursuant to the E-Government Act the original of this page has been filed under seal in the Clerk's Office

A TRUE BILL:

**REDACTED COPY**

_____

F O R E P E R S O N

Jessica D. Aber
United States Attorney

By:   _____
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia – Newport News
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email:  mack.coleman@usdoj.gov

By:   _____
Julie D. Podlesni
Assistant United States Attorney
Eastern District of Virginia – Newport News
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email:  julie.podlesni@usdoj.gov

By:

Brian J. Samuels
Assistant United States Attorney
Eastern District of Virginia
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email:  brian.samuels@usdoj.gov