**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 4:24-cr-4**

**DAVID L. MERRYMAN,**

**Defendant.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is the Government's Supplemental Position on Restitution under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A. ECF No. 89 ("Gov't's Br."). Defendant David L. Merryman also filed a Supplemental Position on Restitution under the MVRA. ECF No. 90 ("Def. Br."). The Court held a hearing on this matter. ECF No. 84 ("Transcript"). This matter is now ripe for judicial determination. For the reasons below, the Government's Brief is **GRANTED in PART and DENIED in PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

On March 12, 2024, Defendant was named in a Superseding Indictment charging him with thirty-one Counts. ECF No. 18. Counts One through Ten charged Defendant with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2. *Id.* Counts Eleven through Thirteen charged Defendant with Interference with Housing, in violation of 42 U.S.C. § 3631 and 18 U.S.C. § 2. *Id.* Counts Fourteen through Fifteen charged Defendant with Interstate Communications with Threats to Injure, in violation of 18 U.S.C. §§ 875(c) and 2. *Id.* Counts Sixteen through Twenty-one charged Defendant with Theft of Government Money, in violation of 18 U.S.C. §§ 641 and 2. *Id.* Counts Twenty-two

through Twenty-five charged Defendant with False Statement to Department of Housing and Urban Development, in violation of 18 U.S.C. §§ 1010 and 2. *Id.* Counts Twenty-six through Twenty-nine charged Defendant with Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A and 2. *Id.* Counts Thirty through Thirty-one charged Defendant with Interference with Federally Protected Activities, in violation of 18 U.S.C. §§ 245(b)(2)(C) and 2. *Id.* On July 31, 2024, Defendant pled guilty to Counts Three, Eleven, Twenty-eight, and Thirty-one. ECF Nos. 42, 43.

According to the Statement of Facts contained in the Presentence Investigation Report ("PSR"), around 2019 through January 2024, Defendant "created a scheme and artifice to defraud and obtain money and property by making various materially false pretenses, representations, and promises." ECF No. 64 ¶ 7 ("PSR"). Defendant obtained benefits from Virginia Department of Housing and Community Development ("VHDA") that were made available because of the COVID-19 pandemic. *Id.* Defendant obtained deposits from prospective tenants by implying that he would lease rentals for longer tenancy terms when his true intention was to evict them as quickly as possible to generate additional profit by collecting deposits from new tenants. *Id.*

Defendant, aided and abetted by others, used the names and other personally identifying information of tenants to apply for rent relief benefits without the tenants' consent. *Id.* Additionally, Defendant fabricated lease agreements that his aiders and abettors filled out with incorrect information before forging his tenants' signatures and falsely represented himself as authorized to act on behalf of his tenants. *Id.* Defendant made false representations about the rent and fees due from the tenant applications, and the time periods the tenant applicants resided at the properties. *Id.* ¶¶ 16–17. Defendant obtained relief benefits and used the money for himself and as commission to his aiders and abettors without telling the tenants. *Id.* Defendant later evicted the

tenants for unpaid rent. *Id.* Defendant also engaged in racist and discriminatory harassment of the tenants and would pressure them to leave the properties to start collecting payments again. *Id.* ¶ Defendant caused electronic transfers of information between the Eastern District of Virginia and outside of Virginia. *Id.* ¶ 20.

On December 18, 2024, the Court sentenced Defendant to 204 months, followed by 3 years of supervised release. ECF Nos. 72, 74. On March 28, 2025, the Court held a hearing on the amount of restitution Defendant owes his victims. On May 27, 2025, both the Government and Defendant filed supplemental positions on restitution.

## II. LEGAL STANDARD

Under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, it provides that whenever "a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." The MVRA describes a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). Restitution shall apply for any offense that is an offense against property "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)–(B). A district court must order a convicted defendant to "return the property to the owner of the property," or, if the property cannot be returned "pay an amount equal to the greater of the value of the property on the date of the damage, loss, or destruction; or the value of the property on the date of sentencing, less the value . . . of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C.

§ 3664(f)(1)(A). "The MVRA limits restitution to the *actual loss* directly and proximately caused by the defendant's offense of conviction." *United States v. Borino*, 123 F.4th 233, 247 (5th Cir. 2024) (alterations in original).

"The MVRA gives district courts discretion to determine the proper method of calculating the value of lost property." *United States v. Steele*, 897 F.3d 606, 610 (4th Cir. 2018). "Instead of prescribing a single valuation method, the MVRA leaves that determination to district courts." *Id.* "District courts use a variety of methods to calculate the value of lost property," including fair market value, replacement cost, and cost to the victim. *Id.* "Nevertheless, [the] MVRA procedure 'makes clear that the defendant is expected from the outset to repay all of the actual losses that he caused, but no more.'" *Id.* at 611 (internal citation omitted). "Thus, in calculating restitution under the MVRA, courts abuse their discretion by granting the defendant a bailout or by allowing the victim to obtain a windfall." *Id.* (internal citations and quotations omitted). In most cases, fair market value is the best method to measure the value of lost property. *Id.* "Fair market value is '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction.'" *Id.* at 610 (alterations in original) (citations omitted). By contrast, replacement cost is "[t]he cost of a substitute asset that is equivalent to an asset currently held." *Id.* at 611 (alterations in original) (citations omitted). "[R]eplacement cost may be an appropriate measure of value when the fair market value is difficult to determine or would inadequately capture the value of the victim's actual losses." *Id.* at 612. "Courts, however, should be cautious when using replacement costs to calculate the value of lost property. Using replacement cost in inappropriate circumstances may incentivize victims to inflate their losses by replacing older, depreciated property with newer, more expensive property." *Id.*

Section 3664(e) establishes a burden-shifting framework for a court to determine the loss-amount. *Borino*, 123 F.4th at 247 (5th Cir. 2024). The government bears the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" by a preponderance of the evidence. *Id.*; *see also* 18 U.S.C. § 3664(e). Then, the burden shifts to the defendant to "demonstrate[e] [his or her] financial resources and the financial needs of [his or her] dependents." *Id.* at 244. "If the defendant satisfies his burden, 'the government can rebut with additional evidence.'" *Borino*, 123 F.4th at 247. Additionally, the Court will consider supporting documentation, including receipts, repair bills, etc., as stated in the Victim Impact Statement form when determining whether to award restitution.

## III. DISCUSSION

The Government requests that the Court order Defendant to pay "restitution in the amount of $347,900.00, which represents $233,326.00 in prepaid restitution as well as an additional $114,574.00."[1] Gov't's Br. at 8. The Government's Supplemental Position focuses on the disputed restitution of $110,316.51. *Id.* At the hearing, the Government called six witnesses[2] to testify and sought restitution for the following victims:

| **Victim** | **Restitution Amount** |
|---|---|
| Victim E.S. | $3,500.00 |
| Victim J.N. | $13,601.21 |
| Victim L.G. | $9,290.00 |
| Victim E.P. | $30,435.30 |

[1] The total amount of restitution the Government is requesting should be $343,642.51 instead of $347,900.00. Based on the figures in the chart and what the Government requests for each victim in its brief, the total outstanding balance of restitution being sought is $110,316.51. $110,316.51+$233,326 brings the total restitution amount being requested to $343,642.51.

[2] Both parties agree that the six witnesses are victims. *See generally* Gov't's Br.; Def.'s Br.

| Victim D.P. | $28,490.00 |
| --- | --- |
| Victim G.J. | $25,000.00 |

The Court will analyze each victim's claim separately. For the reasons stated below, the Court denies restitution to all victims except J.N., who is awarded restitution in the amount of $2,101.99.

**First Victim: E.S.**

The Government argues that restitution is owed to E.S. in the amount of $3,500.00 in lost wages because he testified as part of the criminal investigation. Gov't's Br. at 9; Transcript at 10–11. Under the MVRA, the Court must order Defendant to "reimburse the victim for lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4); Gov't's Br. at 9. Defendant counters that E.S. failed to provide any receipts or documentation to support his claim. Def.'s Br. at 3.

The Court finds that the Government has failed to meet its burden by a preponderance of the evidence. E.S.'s claim is unsupported, and his testimony cannot serve as the principal piece of evidence supporting the $3,500 in lost wages. The Court needs to know how E.S. arrived at the $3,500 figure to justify the lost wages, and as it stands, the record is silent as to how that amount was calculated. Without at least some supporting documentation, the Court cannot order Defendant to pay E.S. $3,500. The Court specifically asked E.S. to name any of the jobs affected because of his court appearance, and he could not name a single job. Transcript at 13. While the Court is sympathetic to E.S.'s experience, the absence of any proof precludes recovery. There is no

indication to the Court that it would be difficult to produce some documents to substantiate his losses. Therefore, the Government's request for $3,500 in restitution is denied.

**Second Victim: J.N.**

The Government argues that J.N. incurred storage expenses in the amount of $13,601.21 because Defendant interfered with his housing rights based on his race. Gov't's Br. at 9. J.N. was forced to move from a two-bedroom house to a one-room rooming house, necessitating storage of his belongings. *Id.* at 10. Defendant argues that the separate storage unit and his offense conduct are too remote to justify restitution. Def.'s Br. at 4.

During the hearing, J.N. testified that he rented a two-bedroom house from Defendant, but left the property in December 2020 pursuant to a settlement agreement. Transcript at 24:4–6, 28:23–25. After he left Defendant's property, he moved into a one-room space because he could not find a place to rent with his fiancée that could accommodate the items he had in his two-bedroom house, forcing him to put his items in storage from December 2020 until December 2024. *Id.* at 18, 20–21, 31.

The Court in no way minimizes the harm Defendant has caused J.N., but the Court finds it unreasonable to expect Defendant to cover J.N.'s storage expenses for nearly four years. J.N. chose to live in a one-room space for nearly four years instead of finding an apartment that would accommodate his belongings. Now, the Court believes that Defendant needs to be held responsible for the storage costs J.N. had to incur, but only for a period of twelve months, as it is a reasonable period of time to find a suitable apartment. Based on J.N.'s testimony and supporting receipts, minus any fees or insurance charges, the Court finds that Defendant owes restitution to J.N. in the amount of $2,101.99. Therefore, the Government's request for $13,601.21 in restitution is denied.

**Third Victim: L.G.**

The Government argues that the Court should order restitution in the amount of $9,290.00,[3] which includes $7,790.00 for lost/destroyed property and $1,500 for transportation expenses to L.G. Gov't's Br. at 10. Defendant argues that L.G. failed to provide any documentary proof to support her claim. Def.'s Br. at 5.

The Court finds that the Government has failed to meet its burden to establish restitution. L.G.'s testimony alone is insufficient to justify restitution. L.G. seeks $1,600 for a sectional and washer and dryer, $3,800 per person for bleached clothing and several $200 pairs of gym shoes, and $1,500 for gas to transport her children to school. Gov't's Ex. 8. However, the Victim Impact Statement form instructed L.G. to "attach supporting documents such as receipts, repair bills, etc." *Id.* Yet, L.G. did not attach a single receipt to support the $1,500 claim for gas, nor a single internet screenshot of the price of clothes or shoes that were damaged because of Defendant's offense conduct. Therefore, the Government's request for $9,290 in restitution is denied.

**Fourth Victim: E.P.**

The Government argues that the Court should order restitution in the amount of $30,435.30.[4] Gov't's Br. at 10. "The approximate value of the lost and damaged property was $43,479.00." However, "the values sought for the property lost/damaged were based [on] the victim's estimate of the 'replacement cost.'" The Government believes a 30% reduction on the amount of restitution sought would give E.P. a fair market value of 30,435.30. Defendant counters that E.P's claim is uncorroborated. Def.'s Br. at 6.

[3] The Government originally stated $9,200.00. However, the correct amount should be $9,290 because that is the total the Court reaches when it adds $7,790+$1,500.

[4] The Government request a 30% reduction on $43,479.00, which equals $30,435.30, not $34,783.00, which is the amount the Government seeks in its brief.

During the hearing, E.P. testified that her mom, brother, two children, and sister lived in one of Defendant's properties. Transcript at 51:9–20. The Government showed her Exhibit 5, which was her home in an uninhabitable condition. *Id.* at 62–63; *see* Gov't's Ex. 5. E.P. testified that the condition of the home in the pictures does not reflect the condition when she rented the home, while she was living in the home, or when she left the home. *Id.* at 62–63. E.P. also stated that the items in the pictures are not the items she listed in her restitution claim. *Id.* at 65.

Similar to L.G., E.P.'s claim for restitution is unsupported, and the Court refuses to order Defendant to pay her $30,435.30 in restitution for a home that she barely recognizes and for unrecognizable items in the pictures. For all the Court knows, those items could belong to someone else, and clearly not E.P. The Court also does not even know the size of the home E.P. lived in to support her claim for lost property. Therefore, the Government's request for $30,435.30 in restitution is denied.

**Fifth Victim: D.P.**

D.P. originally sought restitution in the amount of $125,000.00 plus interest. Gov't's Br. at 11; Transcript at 77:18–25. The Government argues that the demand was ungrounded, and the Court should instead order restitution in the amount of $28,490.00, which reflects a 30% reduction on $40,700.00 for her lost property. Gov't's Br. at 11. Defendant argues that D.P.'s claim is uncorroborated.

The Court finds that the Government failed to meet its burden establishing that Defendant owes D.P. $28,490.00 in restitution. D.P. failed to provide documentation to support her claim for lost property. Therefore, the Government's request for $28,490.00 in restitution is denied.

**Sixth Victim: G.J.**

The Government argues that the Court should order restitution in the amount of $25,000.00 to G.J. Gov't's Br. at 12. "Victim G.J. provided the Court with a number of pictures of the lost/damaged property and an estimate of the replacement cost for those items." *Id.*; *see* Gov't's Ex. 2. Defendant counters that G.J. merely stated a price he would accept for the sale of the items, which is speculative at best. Def.'s Br. at 8.

While G.J. provided pictures and a price he would accept for his belongings, the Court finds the valuation unsupported. G.J. could have researched the price of the shoes and other items to ascertain the fair market value of each item. There's nothing to suggest to the Court that researching the items he listed and providing that research to the Court would have been difficult or impossible. Therefore, the Government's request for $25,000.00 in restitution is denied.

## IV. CONCLUSION

For the foregoing reasons, the Government has failed to meet its burden as it pertains to the victims except for J.N. Thus, the Government's Supplemental Position on Restitution is **GRANTED in PART and DENIED in PART**. ECF No. 89. The Government's request for an additional $110,316.51 is **DENIED**. The Court **GRANTS** an additional amount of restitution to J.N. for $2,101.99. The Court **ORDERS** Defendant to pay $235,427.99 in total restitution.

The Clerk is **DIRECTED** to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
August 1 , 2025

/s/
Raymond A. Jackson
United States District Judge